# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| VIRGINIA JENSEN, | : | |
| Plaintiff, | : | |
| | | Case No. 3:11cv00453 |
| vs. | : | |
| | | District Judge Thomas M. Rose |
| MICHAEL J. ASTRUE, | : | Magistrate Judge Sharon L. Ovington |
| Commissioner of the Social | | |
| Security Administration, | : | |
| Defendant. | : | |

# REPORT AND RECOMMENDATIONS[1]

## I.    INTRODUCTION

Plaintiff Virginia Jensen sought financial assistance from the Social Security Administration by applying for Disability Insurance Benefits ("DIB") in May 2007, alleging disability since June 1, 2006.  (Doc. #7-5, *PageID##* 150-57).  She claims disability from fibromyalgia, neurocardiogenic sycope, and depression.  (Doc. #7-6, *PageID#* 188).

After various administrative proceedings, Administrative Law Judge ("ALJ") Janice Bruning denied Plaintiff's DIB application based on her conclusion that Plaintiff's impairments did not constitute a "disability" within the meaning of the Social Security

---

[1]Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

Act.  (Doc. #7-2, *PageID##* 38-45).  The ALJ's nondisability determination and the resulting denial of benefits later became the final decision of the Social Security Administration.  Such final decisions are subject to judicial review, *see* 42 U.S.C. § 405(g), which Plaintiff is now due.

This case is before the Court upon Plaintiff's Statement of Errors (Doc. #10), the Commissioner's Memorandum in Opposition (Doc. #13), Plaintiff's Reply (Doc. #14), the administrative record (Doc. #7), and the record as a whole.

Plaintiff seeks an Order reversing the ALJ's decision and granting her benefits because she contends proper application of the treating physician rule mandates a finding of disability and that the ALJ's findings are insufficient to warrant a remand for further proceedings.  The Commissioner seeks an Order affirming the ALJ's decision.

## II.     BACKGROUND

### A.     <u>Plaintiff's Vocational Profile and Testimony</u>

Plaintiff was 45 years old on her alleged disability onset date of June 1, 2006, and is thus considered to be a "younger individual" for purposes of resolving her DIB claim. *See* 20 C.F.R. § 404.1563(c); *see also* Doc. #7-2, *PageID#* 43; Doc. #7-6, *PageID#* 185. Plaintiff has a college education, and has worked as a marketing director.  (*Id.* at *PageID##* 189, 193).

Plaintiff testified at the administrative hearing that she experienced pain throughout her body, including in her arms, back, hips, and legs.  Mostly, however, the pain (which she described as achy, tingling, and stabbing) was concentrated in her left

hand, and often left her unable to hold objects or write. (Doc. #7-2, *PageID#* 57).

Unfortunately, she could not take pain medications due to her Barrett's esophagus. (*Id.* at

*PageID#* 58). Prior to being diagnosed with Barrett's, Plaintiff was taking pain

medications, however, they did not significantly relieve her pain. (*Id.* at *PageID##* 67-

68). She testified that she has "allergy-asthma," which requires her to use an inhaler

about once a month. (*Id.*). Plaintiff reported poor sleep at night due to her pain. (*Id.* at

*PageID#* 60).

Plaintiff estimated that she can walk about half a block and stand for 10 to 15

minutes. (*Id.* at *PageID#* 58). She can sit for 10 to 15 minutes. (*Id.* at *PageID#* 59).

Depending on the day, she could generally lift under five pounds. (*Id.*). She previously

used a cane but is no longer able to do so because she is not able to grip it with her hands.

(*Id.* at *PageID#* 60).

As to her daily activities, approximately three times a week Plaintiff drives a very

short distance to swim in a heated therapy pool to help with her arthritis. (*Id.* at *PageID#*

60). She is able to take care of her own personal needs, including getting dressed and

showering, but does so very slowly. (*Id.*). She climbed the stairs of her home once a day.

(*Id.* at *PageID#* 59). Plaintiff can shop for groceries, but does not do so regularly. (*Id.* at

*PageID#* 61). Her husband does the dishes and carries the laundry. (*Id.*). She rarely

vacuums. (*Id.*). Plaintiff typically reads or watches television during the day. (*Id.* at

*PageID#* 63). Plaintiff rarely uses a computer because her hand pain significantly

prohibits her from doing so, but when she does use the computer it is only to keep track

3

of her medications.  (*Id.*).  She occasionally watered plants outside, but did no other yard work.  (*Id.*).

When cross-examined by her counsel, Plaintiff testified that she has neurocardiogenic syncope which she described as a nerve connection problem that results in her going into "shakes" with a decrease of blood pressure and onset of nausea, prompting her to lie flat or pass out.  (*Id.* at *PageID#* 64).  Upon having such an episode, she takes salt to increase her blood pressure. (*Id.*).  When asked about emergency room visits or receiving emergency medical services where she is lying down on the floor, Plaintiff testified her doctor has agreed it is better not to seek emergency treatment as the transportation and movements only tend to increase the severity of symptoms.  (*Id.* at *PageID#* 66).  Plaintiff claimed if she passes out in a store or some other public area, store personnel and other individuals agree not to call for medical assistance after she informs them of her condition.  If necessary, she provides them with the phone number for her husband or doctor so that they may call to verify there is no need to call for emergency care.  (*Id.*).

James Breen, a vocational expert ("VE"), also testified at the hearing.  (*Id.* at *PageID##* 72-76).  The ALJ proposed a series of hypotheticals regarding Plaintiff's residual functional capacity ("RFC")[2] to the VE.  *See id.*  Based on Plaintiff's age, education, work experience, and RFC, the VE testified that as generally performed in

---

[2]The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations.  20 C.F.R. § 404.1545(a); *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

the national economy, Plaintiff's past relevant work as a marketing director would fall under the hypothetical.  (*Id.* at *PageID#* 74).  Such a hypothetical worker could also perform a range of unskilled, sedentary occupations, such as information clerk (with 400 jobs locally and 44,000 in the state), charge account clerk (with 300 jobs locally and about 6,500 in the state), and order clerk (with about 900 jobs locally and about 15,000 jobs in the state economy).  (*Id.*).  If the individual would be off-task 20 percent of the work day, that would be outside of the customary tolerances for employers.  (*Id.*).  The VE stated that his job findings were consistent with the information found in the *Dictionary of Occupational Titles* ("DOT").  (*Id.* at *PageID#* 75).

When examined by Plaintiff's counsel, the VE testified that if the hypothetical worker was additionally precluded from using the upper extremities for grasping, turning, twisting of objects; using the fingers and hands for fine manipulation; and would also be essentially precluded from reaching overhead; he or she would not be able to perform the past relevant work as it is commonly performed in the industry nor other jobs outlined above.  (*Id.* at *PageID##* 75-76).

Turning to other evidence, Plaintiff and the ALJ have provided detailed and informative descriptions of Plaintiff's medical records and other pertinent evidence which eliminates the need for a repeated description here. *See* Doc. #10, *PageID##* 614-20; Doc. #7-2, *PageID##* 41-43.  In light of this, and upon consideration of the complete administrative record, there is no need to fully reiterate or expand the descriptions.  The primary medical source opinions of record, however, are detailed below.

Plaintiff relies on the opinion of her family doctor, Jo Yvette Pelfrey, M.D., who treated Plaintiff from August 1997 until at least May 2010. (Doc. #7-7, *PageID##* 370-427, 432-45, 462-73, 479-83, 498-31; Doc. #7-8, *PageID##* 542-43, 545-68).

On August 30, 2007, Dr. Pelfrey reported that Plaintiff's diagnoses included asthma, neurocardiogenic syncope, and fibromyalgia. (Doc. #7-7, *PageID#* 372). Plaintiff's symptoms included asthma that waxes and wanes with exposure to infections and allergens, syncopal attacks with episodes of low blood pressure, and severe pain secondary to fibromyalgia. Dr. Pelfrey reported that clinical findings included tenderness in multiple areas, including the chest and arms, consistent with fibromyalgia. (*Id.*). Other treatment included rest, therapy, and evaluations by specialists. (*Id.* at *PageID#* 373). Dr. Pelfrey concluded that Plaintiff's generalized pain is constant and interfered with all of her activities. (*Id.*)

Dr. Pelfrey completed a Multiple Impairment Questionnaire on September 13, 2007. (Doc. #7-7, *PageID##* 397-404). Dr. Pelfrey listed Plaintiff's diagnoses as fibromyalgia (acute and chronic), hypertension, hypothyroidism, hyperlipidemia, osteoarthritis and generalized pain. (*Id.* at *PageID#* 397). Clinical findings included evaluations by a rheumatologist and a psychiatrist. (*Id.*). Dr. Pelfrey listed Plaintiff's primary symptom as generalized constant pain. (*Id.* at *PageID#* 398). Her pain was rated as moderately severe to severe (7 to 10 on a 10-point scale), and fatigue rated as severe (10 on a 10-point scale). (*Id.* at *PageID#* 399). Dr. Pelfrey opined that Plaintiff was able to sit less than 1 hour total and stand/walk less than 1 hour total in an 8-hour workday.

6

She also needed to get up and move around at variable intervals when sitting.  (*Id.*).  Dr. Pelfrey opined that Plaintiff could not lift or carry any weight.  (*Id.* at *PageID#* 400).  She had significant limitations performing repetitive reaching, handling, fingering, and lifting due to painful grasping.  (*Id.*).  Dr. Pelfrey reported that Plaintiff was essentially precluded from using her upper extremities for grasping, turning, and twisting objects; performing fine manipulations; and reaching.  (*Id.* at *PageID##* 400-01).  Dr. Pelfrey felt that Plaintiff's pain, fatigue, or other symptoms "constantly" interfered with her attention and concentration.  (*Id.* at *PageID#* 402).  She also required constant breaks to rest during an 8-hour day.  (*Id.*).  Dr. Pelfrey also opined that Plaintiff's symptoms and limitations as described in the questionnaire were progressive since 2005.  (*Id.* at *PageID#* 403).

In a narrative report prepared on October 30, 2007, Dr. Pelfrey reported that Plaintiff suffers from asthma, fibromyalgia, hypothyroidism, hyperlipidemia, and neurocardiogenic syncope.  (Doc. #7-7, *PageID##* 425-26).  Dr. Pelfrey opined that Plaintiff's "activities are limited by her ability to perform day to day functions due to her combined co-morbid conditions.  Her prognoses for recovery is poor and will likely exceed 12 months in duration.  It is my professional opinion that [Plaintiff] will be unable to work, she cannot work full or part-time.  I do not see this changing in the upcoming future."  (*Id.* at *PageID#* 426).

In May 2009, Dr. Pelfrey again opined that Plaintiff could sit for 0 to 1 hour in an 8-hour day; could stand/walk for only 0 to 1 hour in an 8-hour day; could not lift or carry any weight at all; and was markedly limited in her ability to do repetitive reaching,

handling, fingering, and lifting with either upper extremity.  (Doc. #7-6, *PageID##* 241-48).

On April 26, 2010, Dr. Pelfrey reported that Plaintiff continued to be treated for fibromyalgia, hypertension, hypothyroidism, hyperlipidemia, neurocardiogenic syncope, generalized pain, osteoarthritis of the knees, and ischemic necrosis of the medial to lateral femoral joint secondary to asthma steroids.  (Doc. #7-8, *PageID##* 542-43). According to Dr. Pelfrey, Plaintiff suffers from constant pain that ranged from 7 to 10 and fatigue rated as a 10 on a ten-point scale.  Dr. Pelfrey opined that Plaintiff continued to be limited to sit, stand, and walk no more than 1 hour total in an 8-hour workday.  She also needed to avoid lifting and carrying even minimal weight due to pain.  (*Id.*).

## III.  ADMINISTRATIVE REVIEW

### A.    "Disability" Defined

The Social Security Administration provides DIB to individuals who are under a "disability," among other eligibility requirements.  *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 423(a)(1)(D).  The term "disability" – as defined by the Social Security Act – has specialized meaning of limited scope.  It encompasses only those who suffer from a medically determinable physical or mental impairment severe enough to prevent them from engaging in substantial gainful activity.  *See* 42 U.S.C. § 423(d)(1)(A); *see also Bowen*, 476 U.S. at 469-70.  A DIB applicant bears the ultimate burden of establishing that he or she is under a "disability."  *Key v. Callahan*, 109 F.3d

8

270, 274 (6th Cir. 1997); *see Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992); *see also Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).

The term "disability" – as defined by the Social Security Act – carries a specialized meaning of limited scope. Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are "medically determinable" and severe enough to prevent the claimant (1) from performing his or her past job, and (2) from engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

**B.    Social Security Regulations**

Administrative regulations require ALJs to resolve a disability claim through a five-Step sequential evaluation of the evidence. *See* Doc.# 7-2, *PageID##* 38-40; *see also* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any Step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review answers five questions:

1.    Has the claimant engaged in substantial gainful activity?

2.    Does the claimant suffer from one or more severe impairments?

3.    Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the Listings), 20 C.F.R. Subpart P, Appendix 1?

4.    Considering the claimant's residual functional capacity, can he perform his past relevant work?

5.    Considering the claimant's age, education, past work experience, and residual functional capacity, can he or she perform other work available

in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Colvin*, 475 F.3d at 730; *Foster v. Halter*, 279

F.3d 348, 354 (6th Cir. 2001).

### C.   ALJ Bruning's Decision

ALJ Bruning's pertinent findings began at Step 2 of the sequential evaluation

where she concluded that Plaintiff has the severe impairments of fibromyalgia, avascular

necrosis of the left knee, asthma, Barrett's syndrome, gastroesophageal reflux disease,

and neurocardiogenic syncope.  (Doc. #7-2, *PageID#* 40). The ALJ determined that

Plaintiff did not have a severe mental impairment based on the essentially normal mental

status findings of Dr. Boerger and the lack of formal mental health treatment.  (*Id.*).

The ALJ concluded at Step 3 that Plaintiff did not have an impairment or

combination of impairments that met or equaled one in the Listings.  (*Id.*).  In doing so,

the ALJ explicitly considered the provisions of Section 1.01 (dealing with

musculoskeletal impairments), Section 3.01 (dealing with pulmonary disease), Section

5.01 (dealing with the digestive system), and Section 4.01 (dealing with cardiovascular

disease).  (*Id.* at *PageID#* 41).

At Step 4, ALJ Bruning concluded that Plaintiff retained the RFC to perform

sedentary work[3]; except she must have a sit and stand option which allows her to stand

after sitting one hour; avoid concentrated exposure to lung irritants; avoid concentrated

---

[3]The Regulations define sedentary work as involving the ability to lift "no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools...." 20 C.F.R. § 404.1567(a).

exposure to work hazards such as heights and moving machinery.  (*Id.*).  The ALJ concluded that while Plaintiff's impairments could reasonably be expected to cause her alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of her symptoms are not credible to the extent these statements were inconsistent with the assigned RFC.  (*Id.* at *PageID#* 42).

The ALJ concluded at Step 4 that Plaintiff is capable of performing her past relevant work as a marketing director.  According to ALJ Bruning, this work does not require the performance of work-related activities precluded by the above RFC.  (*Id.* at *PageID#* 43).

At Step 5, the ALJ used sections 201.21 of the Grid[4] as a framework for deciding, and considering Plaintiff's age, education, work experience, and RFC, found there are jobs that exist in significant numbers in the national economy that Plaintiff can perform on a sustained basis.  (*Id.* at *PageID##* 43-44).

The ALJ's findings throughout her sequential evaluation led her to ultimately conclude that Plaintiff was not under a disability, and she was therefore not eligible for DIB.  (*Id.* at *PageID#* 44).

## IV.    JUDICIAL REVIEW

Judicial review of an ALJ's decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by

---

[4]*See* Medical-Vocational Guidelines, 20 C.F.R. Subpart P, Appendix 2.

substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir.

2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

Review for substantial evidence is not driven by whether the Court agrees or

disagrees with the ALJ's factual findings or by whether the administrative record contains

evidence contrary to those factual findings. *Rogers v. Comm'r of Soc. Sec.*, 486

F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th

Cir. 1999). Instead, the ALJ's factual findings are upheld if the substantial-evidence

standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as

adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r*

*of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of

"more than a scintilla of evidence but less than a preponderance..." *Rogers*, 486 F.3d at

241.

The second line of judicial inquiry, reviewing for correctness the ALJ's legal

criteria, may result in reversal even if the record contains substantial evidence

supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d

647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[Even if supported by substantial

evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to

follow its own regulations and where that error prejudices a claimant on the merits or

deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part

*Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541,

546-47 (6th Cir. 2004)).

## V.    DISCUSSION

### A.    <u>The Parties' Contentions</u>

Plaintiff assigns three errors in this case.  First, Plaintiff contends that the ALJ erred in her evaluation of treating physician Dr. Pelfrey's opinion.  (Doc. #10, *PageID#* 621).  According to Plaintiff, the ALJ gave little weight to the opinion of her treating physician, Dr. Pelfrey, on the basis that her examinations were "normal."  (*Id.* at *PageID#* 622).  In addition, Plaintiff argues that the ALJ's analysis suggests that she has a fundamental misunderstanding of fibromyalgia.  (*Id.*).  Second, Plaintiff asserts that the ALJ erred in finding Plaintiff's testimony not credible.  (*Id.* at *PageID#* 625).  Finally, Plaintiff argues that the ALJ relied upon flawed VE testimony.  (*Id.* at *PageID#* 627).

The Commissioner contends that the ALJ reasonably declined to credit Dr. Pelfrey's extreme, unsupported, and unexplained opinions.  (*See* Doc. #13, *PageID#* 641).  According to the Commissioner, the ALJ agreed that Plaintiff's fibromyalgia was a severe impairment, and, in fact, noted the limited clinical evidence that supported the diagnosis.  The Commissioner argues that the ALJ rightfully did not adopt Dr. Pelfrey's opinions because they appeared to be based simply on diagnoses and Plaintiff's unreliable complaints.  (*Id.* at *PageID#* 642).  The Commissioner emphasizes that the limitations Dr. Pelfrey placed on Plaintiff's ability to work were not supported by Dr. Pelfrey's treatment notes and the ALJ reasonably declined to adopt those limitations as unsupported by clinical findings.

13

The Commissioner further contends that the ALJ's finding regarding the credibility of Plaintiff's statements about her conditions and symptoms was reasonable and that substantial evidence supports the ALJ's assessment of Plaintiff's RFC and the VE's responses to hypotheticals that were reflective of what the ALJ reasonably found as Plaintiff's RFC. (*Id.* at *PageID#* 644).

For the reasons that follow, the undersigned finds that the ALJ failed to articulate good reasons for discounting the opinion of Plaintiff's treating physician, Dr. Pelfrey, and recommends the case be remanded.

### B.    Medical Source Opinions

### 1.

### Treating Medical Sources

The treating physician rule, when applicable, requires the ALJ to place controlling weight on a treating physician's or treating psychologist's opinion rather than favoring the opinion of a nonexamining medical advisor or a one-time examining physician or psychologist or a medical advisor who testified before the ALJ. *Blakley,* 581 F.3d at 406 (6th Cir. 2009); *see Wilson*, 378 F.3d at 544 (6th Cir. 2004). A treating physician's opinion is given controlling weight only if it is both well supported by medically acceptable data and if it is not inconsistent with other substantial evidence of record. (*Id.*).

"If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors,

14

including the length of the treatment relationship and the frequency of the examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley,* 581 F.3d at 406 (citing *Wilson*, 378 F.3d at 544).

More weight is generally given to the opinions of examining medical sources than is given to the opinions of non-examining medical sources. *See* 20 C.F.R. § 404.1527(d)(1). Yet the opinions of non-examining state agency medical consultants have some value and can, under some circumstances, be given significant weight. This occurs because the Commissioner views such medical sources "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act." Social Security Ruling 96-6p. Consequently, opinions of one-time examining physicians and record-reviewing physicians are weighed under the same factors as treating physicians including supportability, consistency, and specialization. *See* 20 C.F.R. § 404.927(d), (f); *see also* Ruling 96-6p at *2-*3.

**2.**

**Non-Treating Medical Sources**

The Commissioner views non-treating medical sources "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act." Social Security Ruling 96-6p, 1996 WL 374180 at *2. Yet the Regulations do not permit an ALJ to automatically accept (or

15

reject) the opinions of a non-treating medical source. *See id.* at *2-*3. The Regulations explain, "In deciding whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive." 20 C.F.R. § 404.1527(b). To fulfill this promise, the Regulations require ALJs to evaluate non-treating medical source opinions under the factors set forth in § 404.1527(d), including, at a minimum, the factors of supportability, consistency, and specialization. *See* 20 C.F.R. § 404.1527(f); *see also* Ruling 96-6p at *2-*3.

### C.    Analysis

The ALJ correctly set forth that the standards applicable to evaluating a treating physician's opinion to determine controlling weight must be placed on Dr. Pelfrey's opinions under the treating physician rule. *See* Doc. #7-2, *PageID#* 41. The ALJ then applied the correct legal criteria under the treating physician rule to Dr. Pelfrey's opinion by giving Dr. Pelfrey's opinions "little weight" as they are not supported by objective findings. (*Id.*). The ALJ found that Plaintiff had "normal examination of her upper and lower extremities with normal testing yet Dr. Pelfrey assigns extreme limitations." (*Id.*). *See* 20 C.F.R. § 404.1527(d)(2).

The ALJ, however, erred by not continuing to weigh Dr. Pelfrey's opinions under the remaining factors of the Regulations. *See* Doc. #7-2, *PageID##* 42-43. The ALJ did not explicitly identify the continued-weighing requirement and did not frame her evaluation in terms sufficient to explain what regulatory factor led her to assign Dr. Pelfrey's opinions "little weight." In addition, if the ALJ's explanation could be read as

applying the continued-weighing requirement, substantial evidence does not support her findings.

Speaking through the Rulings, the Commissioner instructs:

Adjudicators must remember that a finding that a treating source's medical opinion is not well-supported by medically acceptable clinical and laboratory techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected. Treating source opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. §404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

Social Security Ruling 96-2p. Because the ALJ did not heed this instruction or requirement of the Regulations, her evaluation of Dr. Pelfrey's opinion was based on an error of law.

Even if the ALJ's decision could be reasonably read as applying the correct legal criteria, a more significant error looms throughout her discussion of the evidence of record and the opinions of Dr. Pelfrey: specifically, the ALJ did not rely on a medical source opinion or other evidence of record to support her conclusion that Plaintiff was capable of sedentary exertional work which was limited by a sit and stand option which allows her to stand after sitting one hour; avoid concentrated exposure to lung irritants; and avoid concentrated exposure to work hazards such as heights and moving machinery. *See* Doc. #7-2, *PageID##* 41-43. The ALJ instead relied on what she believed was "minimal objective findings, her admitted activities and the inconsistent testimony." (*Id.* at *PageID#* 43). The only other opinion evidence of record was that of State agency

17

physicians who reviewed the file in June and December 2007 and found that Plaintiff could perform medium work exertionally.  (Doc. #7-7, *PageID##* 362-69, 429).  The ALJ also failed to state what weight she gave these opinions.

The ALJ erred by drawing her own conclusions from the medical evidence.  Case law recognizes that "an ALJ must not substitute his own judgment for a physician's opinion without relying on other evidence or authority in the record." *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000).  Additionally, the Sixth Circuit has noted that "[s]tate agency medical consultants are considered experts and their opinions may be entitled to greater weight if their opinions are supported by the evidence."  *Hoskins v. Comm'r of Soc. Sec.,* 106 F. App'x 412, 415 (6th Cir. 2004).  Given the existing record, this Court can only deduce that the ALJ's RFC finding was based on the ALJ's own interpretation of Plaintiff's capabilities, not on the evidence.

Because the ALJ failed to follow the Regulations in analyzing the medical opinions of record and failed to accord proper weight to the opinions of the treating physician, and because her basis for rejecting Dr. Pelfrey's opinion lacks substantial support in the record, the ALJ's RFC finding is not supported by substantial evidence. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530-31 (6th Cir. 1997).

**D.**    **Harmless Error**

The United States Court of Appeals has explained:

"'[w]e do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we

18

> will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion.'"

*Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009) (quoting *Wilson*, 378 F.3d at 545). In *Wilson*, the United States Court of Appeals for the Sixth Circuit remanded the ALJ decision for failure to comply with the good-reason rule. *Wilson*, 378 F.3d at 550.

Although it did not actually decide the issue, the *Wilson* Court opened the door for considerations of whether a violation of the good-reason requirement was harmless error. *See id.* at 547–48. Specifically, *Wilson* considered three possible scenarios that could lead the Court to a finding of harmless error. (*Id.* at 547). First, the Court indicated that harmless error might occur "if a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it . . ." (*Id.*). Second, the Court noted that if the ALJ's decision was "consistent with the opinion, it may be irrelevant that the ALJ did not give weight to the treating physician's opinion, and the failure to give reasons for not giving such weight is correspondingly irrelevant." (*Id.*). Finally, *Wilson* considered the possibility of a scenario "where the Commissioner has met the goal of § 1527(d)(2)-the provision of the procedural safeguard of reasons-even though she has not complied with the terms of the regulation." (*Id.*). Since *Wilson*, the Sixth Circuit has continued to conduct a harmless error analysis in cases in which the claimant asserts that the ALJ failed to comply with the good-reason requirement. *See Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x. 462, 472 (6th Cir. 2006) (finding that even though the ALJ failed to meet the letter of the good-reason requirement the ALJ met the goal by indirectly attacking the

consistency of the medical opinions); *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 749

(6th Cir. 2007) (finding that the facts did not satisfy potential harmless error

justifications).

In this case, the ALJ's failure to comply with the good-reason requirement was not

harmless error.[5]  First, although Dr. Pelfrey's opinions may be inconsistent with other

portions of the record, the record contains no indication that Dr. Pelfrey's opinions "are

so patently deficient that the Commissioner *could not possibly* credit it . . ." *Wilson*, 378

F.3d at 547 (emphasis added).  Notably, portions of Dr. Pelfrey's opinions, such as her

conclusion that Plaintiff should have a sit/stand option, are clearly consistent with the

ALJ's determination.  Because of Dr. Pelfrey's status as a treating physician, the ALJ was

obligated to justify why she rejected those opinions and reached an inconsistent

conclusion.  Finally, the ALJ's decision does not provide enough detail regarding the

weight she gave to Dr. Pelfrey's opinions to conclude that the goal of the good-reason

rule has been met.  For all the above reasons, the ALJ failed to comply with the good-

reason requirement, and remand is needed to correct this error.[6]

## VI.    REMAND IS WARRANTED

If an ALJ failed to apply the correct legal standards or his factual conclusions are

---

[5]Defendant does not raise the issue of harmless error, (*see* Doc. #13 at *PageID##* 641-45), however, the Court nonetheless deems it important to note that following the reasoning and scenarios described in *Wilson* the ALJ's error was not harmless.

[6]In light of the above review, and the resulting need for remand of this case, an in-depth analysis of Plaintiff's remaining contentions is unwarranted.

not supported by substantial evidence, the Court must decide whether to remand the case for rehearing or to reverse and order an award of benefits. Under Sentence Four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Remand is appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case, because the evidence of disability is not overwhelming, and because the evidence of a disability is not strong while contrary evidence is weak. *See Faucher*, 17 F.3d at 176. Plaintiff, however, is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of § 405(g), due to the errors outlined above. On remand, the ALJ should be directed (1) to re-evaluate the medical source opinions under the legal criteria set forth in the Commissioner's Regulations, Rulings, and as required by case law; and (2) to reconsider, under the required sequential evaluation procedure, whether Plaintiff was under a disability and thus eligible for DIB. Accordingly, the case should be remanded to the Commissioner and the ALJ for further proceedings consistent with this Report and Recommendations.

## IT IS THEREFORE RECOMMENDED THAT:

1.     The Commissioner's non-disability finding be vacated;

21

2.     No finding be made as to whether Plaintiff Virginia Jensen was under a "disability" within the meaning of the Social Security Act;

3.     This case be **REMANDED** to the Commissioner and the Administrative Law Judge under Sentence Four of 42 U.S.C. § 405(g) for further consideration consistent with this Report; and

4.     The case be terminated on the docket of this Court.

November 20, 2012

                                             ___s/Sharon L. Ovington___
                                               Sharon L. Ovington
                                    United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen (14) days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen (17) days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).